UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDDIE LEE TAYLOR,<br><br>    Petitioner,<br><br>    v.<br><br>RON DAVIS, Warden of San Quentin State Prison,<br><br>    Respondent. | No. C-92-1627 EMC<br><br>**DEATH PENALTY CASE**<br><br>**ORDER RE CLAIM 3(A)** |

## I. INTRODUCTION

Petitioner was convicted and sentenced to death for the robbery, attempted rape, and murder of an 84-year-old woman in January 1985. The California Supreme Court affirmed Petitioner's conviction and death sentence in 1990. *People v. Taylor*, 52 Cal. 3d 719 (1990). Petitioner's state petition for writ of habeas corpus was denied in September 1990; his petition for a writ of certiorari was denied by the United States Supreme Court in October 1991.

Petitioner filed his first federal Petition for Writ of Habeas Corpus on July 10, 1995. His First Amended Petition was filed on April 30, 1997, and his second state petition was filed on June 27, 1997 with the California Supreme Court. The second state petition was denied on July 16, 2003. All of the claims were denied on the merits, and certain claims were also denied on state procedural grounds. Petitioner's Second Amended Petition was filed in federal court on March 12, 2004; a portion of that petition was found to be unexhausted. Petitioner's third state habeas, filed on September 12, 2005, was denied on September 11, 2013.

Having exhausted all of his claims in state court, Petitioner returned to this Court. Per an Order dated February 26, 2016, this Court **GRANTED** Claim 3(A) of Petitioner's Second Amended Petition, finding that the trial court should have held a competency hearing due to bona fide doubts regarding Petitioner's competency. *See, e.g., Pate v. Robinson*, 383 U.S. 375, 385 (1966); *Maxwell v. Roe*, 606 F.3d 561, 568 (9th Cir. 2010); *Cacoperdo v. Demosthenese*, 37 F.3d 504, 510 (9th Cir. 1994). Specifically, the Court found and concluded that the following should have raised a "bona fide doubt" as to Petitioner's competence and triggered a hearing: (1) his behavior pre-trial; (2) his behavior during trial; (3) his decisions prior to the penalty phase and; (4) his history of mental illness, including his stays in a mental health hospital, and his diagnoses of brain damage, paranoid schizophrenia, and borderline personality disorder.

The Court also ordered the parties to brief the issue of a potential remedy, specifically whether or not the record "contains sufficient information upon which to base a reasonable psychiatric judgment." *Odle v. Woodford*, 238 F.3d 1084, 1089-90 (9th Cir. 2001). If so, it is possible for a retroactive competency hearing to be held by the state court. *Id.* Otherwise, Petitioner must either be released or retried. For the following reasons, the Court finds and concludes that there is not sufficient information in the record upon which to base a reasonable psychiatric judgment as to Petitioner's competency at the time of trial, and thus Petitioner must either be released or retried.

## II.   FACTUAL BACKGROUND[1]

Carmen Carlos Vasquez, an 84-year-old widow, was found dead by her son on the afternoon of January 22, 1985. She was severely beaten, and the cause of death was determined to be traumatic head and neck injuries. Vasquez also had injuries consistent with rape, including a swollen and bruised genital area, and areas of hemorrhage in her vaginal wall. Additionally, her underpants were torn. The rape kit did not reveal semen, sperm or foreign pubic hairs.

The prosecution's evidence showed that the intruder had entered via a rear door at Vasquez's home, breaking the glass in the door. Petitioner's palm print was found on a piece of broken glass;

---

[1] The following facts are taken from Petitioner's direct appeal to the California Supreme Court. *People v. Taylor*, 52 Cal. 3d 719, 729-31 (1990).

2

his fingerprints were found on the inside latch of the screen door and on the doorjamb between the kitchen and the living room.  The parties stipulated that Petitioner owned a pair of shoes within the class of shoes that could have left a shoe print in the house.  Petitioner's grandmother lived across the street from Vasquez, and Petitioner visited his grandmother the evening before Vasquez's body was found.

The defense chose not to present evidence, instead arguing that the prosecution had not met its burden of proving guilt beyond a reasonable doubt.  Defense counsel pointed to unidentified fingerprints and a footprint that had been found in the house, and argued that someone else could have been the killer.

Petitioner was convicted of first degree murder, robbery, attempted rape, and three counts of burglary.  The jury also found true three prior conviction enhancements, and two special circumstances (murder while the defendant was engaged in the commission or attempted commission of a robbery, and murder while the defendant was engaged in the commission or attempted commission of a burglary).  A third special circumstances allegation – that the murder was committed while defendant was engaged in the commission or attempted commission of attempted rape – was found not true.  The same jury sentenced Petitioner to death.

### III.  STANDARD OF REVIEW

A criminal defendant has a constitutional due process right not to be tried or convicted while incompetent to stand trial.  Due process requires a trial court to conduct a competency hearing if it has a "bona fide doubt" concerning the defendant's competence.  *Pate*, 383 U.S. at 385.  The United States Supreme Court has never held that a retroactive competency hearing after a finding of a *Pate* violation would adequately protect a criminal defendant's due process rights.  *Id.* at 385-86 (finding that "retrospectively determining an accused's competency" would be generally difficult, and the fact that "Robinson's hearing would be held six years after the fact [would] aggravate[] these difficulties."  Similarly, in *Drope v. Missouri*, 420 U.S. 162, 183 (1975), the Court found that the "inherent difficulties" of a retroactive competency hearing counseled against such a remedy, given that six years had passed since Drope's trial.  Accordingly, the Court held that a retroactive competency hearing would not satisfy due process.  *Id.*

The Supreme Court has not held, however, that a retroactive competency hearing is never appropriate, and a number of Circuit Courts have authorized such hearings under certain circumstances. The Ninth Circuit, for example, has held that a fair retroactive competency hearing comporting with due process requirements may be possible where there is abundant evidence available regarding a defendant's competency at the time of trial. *See, e.g.*, *Odle v. Woodford*, 238 F.3d 1084, 1087-89 (9th Cir. 2001).

### IV. DISCUSSION

The Court finds and concludes that there is insufficient evidence available upon which to base a retroactive competency hearing for Petitioner. The trial itself was thirty years ago. *See Pate*, 383 U.S. at 377-78 (finding that there could be no meaningful retroactive competency hearing at the "late date" of six years post trial). In addition, there are no contemporaneous medical records fully evaluating Petitioner's competency to stand trial. As the Court described in its previous order, Drs. Block and Nemeth examined Petitioner and testified during the penalty phase as to his mental health, but neither of them were asked to – nor did they perform – a competency evaluation. Second Am. Pet., Exh. N, Block Decl. at ¶¶ 16, 20.

A third doctor, Dr. Hjortsvang, examined Petitioner four to six months prior to the start of trial, and was not specifically retained to conduct a competency evaluation. Dr. Hjortsvang did, however, state in his report that he "felt [Petitioner] understood the nature and purpose of the court proceedings and he could stand trial." Second Am. Pet., Exh. I, Appendix 58. There is no other medical evidence specifically concerning Petitioner's competency to stand trial, and given that Dr. Hjortsvang examined Petitioner months prior to trial and did not specifically evaluate him for competency, his one sentence statement cannot be considered sufficient contemporaneous medical evidence regarding Petitioner's competency to satisfy due process requirements. *See Torres v. Prunty*, 223 F.3d 1103, 1106 (9th Cir. 2000).

Furthermore, there is no evidence before the Court that relevant witnesses who interacted with Petitioner prior to and during trial are currently available to testify in a retroactive competency hearing. The prosecutor, defense attorney and trial judge at Petitioner's trial have all retired, resigned or relocated, according to records of the State Bar of California. In addition, Respondent

4

has not provided any evidence that the doctors who examined Petitioner prior to his trial, and who presumably are in the best position to testify as to his competency at that time, would be available to testify.

Despite this, Respondent maintains that it would be possible to conduct a retroactive competency hearing that would comport with due process. In support of this position, Respondent relies primarily on three cases from the Ninth Circuit. Each of these cases, however, is distinguishable from the case at bar.

To begin with, Respondent relies on *Odle*, where the Ninth Circuit found that the trial court should have held a competency hearing based on evidence, *inter alia*, that Odle had suffered severe brain trauma and had a long history of psychiatric hospitalizations. 238 F.3d at 1087-89. In addition, the Ninth Circuit found that holding a retroactive competency hearing that comported with due process was possible because of the copious evidence available regarding Odle's competency at the time of trial. *Id.* at 1090. As this Court has found *supra*, however, there is no meaningful medical evidence available regarding Petitioner's competency at the time of trial. In addition, 18 years had elapsed since Odle's trial – a substantial time to be sure, but more than a decade less than the 30 years that have passed since Petitioner's trial, making it much less likely in Petitioner's case that relevant witnesses who might be able to testify as to Petitioner's competency at the time of his trial are available to testify.

*United States v. Duncan,* 643 F.3d 1242, 1248-50 & n.3 (9th Cir. 2011), also relied on by Respondent, is even more distinguishable from Petitioner's case. In *Duncan*, a direct appeal case, the Ninth Circuit held that the district court had committed a *Pate* error by failing to hold a full competency hearing prior to allowing Duncan to represent himself during the penalty phase of his trial. *Id.* at 1244. While recognizing that the Supreme Court had cautioned against retroactive hearings, the court also found that a retroactive competency hearing was possible, in part because only three years had passed between the trial and the Ninth Circuit's review of the case. *Id.* at 1250 n.3. Furthermore, there was substantial evidence available regarding Duncan's competence at the time of trial, because five mental health professionals had examined Duncan regarding the issue of his competence, and submitted reports to the district court. *Id.* at 1245-46. Two experts found that

Duncan was competent to represent himself, and three experts found that he was not. *Id.* Despite this conflicting evidence, the district court had decided not to hold a full competency hearing, and allowed Duncan to represent himself at the penalty phase of his trial, where he was sentenced to death. *Id.* at 1246. Such circumstances are markedly different from Petitioner's case, where no experts evaluated him at the time of trial specifically regarding his competency, and where 30 years have passed since his trial.

Finally, Respondent relies upon *Moran v. Godinez*, 57 F.3d 690, 697 (9th Cir. 1994). In *Moran*, the Ninth Circuit examined the procedures used in a retrospective competency hearing and found that they comported with due process. *Id.* at 696. Petitioner Moran had waived his counsel and pled guilty to three counts of capital murder. *Id.* at 694. Although Moran informed the trial court that he was being medicated, and the trial court was aware he had recently attempted suicide, no hearing as to his competency was held. *Id.*

The Ninth Circuit held that under such circumstances, the trial court should have entertained a good faith doubt as to Moran's competence and held an immediate competency hearing. *Id.* at 695. The court further held that the trial court's failure to do so amounted to a due process violation under *Pate*, but that a retroactive competency hearing held during post-conviction proceedings cured the due process violation. *Id.* at 696-97. Specifically, the retroactive hearing was held only three years after Moran waived counsel, was presided over by the original judge, and included evidence from two psychiatrists who had evaluated Moran's competency two months before he waived counsel, and concluded that he was competent. *Id.* at 696. In addition, one of the psychiatrists testified at the retroactive hearing. *Id.* Given the proximity in time, the contemporaneous evidence regarding competency, and the fact that state court competency determinations are entitled to a presumption of correctness, the Ninth Circuit upheld the state court's determination of competency. *Id.* Here, by contrast, 30 years have passed since the original trial, and there are no contemporaneous medical records specifically addressing Petitioner's competency.

As the above discussion amply demonstrates, Petitioner's case is not comparable to the Ninth Circuit cases finding that a retroactive competency hearing can comport with due process requirements. In addition, numerous Ninth Circuit cases have found that a retroactive competency

6

1 hearing in circumstances similar to Petitioner's would *not* comport with due process requirements.
2 For example, in *Maxwell v. Roe*, 606 F.3d 561, 568 (9th Cir. 2010), the Ninth Circuit held that a
3 "meaningful retroactive competency determination, given the twelve-year delay and sparse medical
4 record, is not possible," even though the defendant's competency had been evaluated eighteen
5 months before trial.  Similarly, in *McMurtrey v. Ryan*, 539 F.3d 1112, 1131 (9th Cir. 2008), the
6 Ninth Circuit held that a competency hearing held thirteen years after trial, did not cure the *Pate*
7 error "given the passage of time, the lack of medical records, and the absence of a doctor who
8 assessed McMurtrey at the time of trial."  *See also Blazak v. Ricketts*, 1 F.3d 891, 894 n.3 (9th Cir.
9 1993) (finding that "since over seventeen years had expired since the trial, it would be impossible to
10 determine Blazak's actual competency retrospectively"); *Tillery v. Eyman*, 492 F.2d 1056, 1059 (9th
11 Cir. 1974) (holding that "[b]ecause of the difficulty of retroactively determining one's competency
12 to stand trial, after the lapse of [seven] years, Tillery must be discharged unless Arizona elects to
13 retry him within a reasonable time)."

14      Accordingly, this Court finds and concludes that, given the 30-year passage of time and the
15 lack of contemporaneous medical evidence regarding Petitioner's competency, a retroactive
16 competency hearing would not cure the due process violation of failing to conduct a competency
17 hearing during Petitioner's trial.  *See Pate*, 383 U.S. at 385.

18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

## V. CONCLUSION

For the foregoing reasons, the court hereby **ORDERS** as follows:

1. The petition for writ of habeas corpus is **GRANTED** on the basis of Claim 3(A) and Petitioner's judgment of conviction and sentence of death are accordingly **VACATED**.

2. Pursuant to the Court's earlier orders, Claims 12(C), 12(D), and 15(B) are **DENIED**.

3. All of Petitioner's remaining claims are **DISMISSED AS MOOT**.

4. The Court **ORDERS** the State of California either to release Petitioner or retry him, within 90 days, in compliance with California state law and the United States Constitution.

IT IS SO ORDERED.

Dated: September 30, 2016

_____
EDWARD M. CHEN
United States District Judge